AO 106 (Rev. 04/10) Application for a Search Warrant                    AUTHORIZED AND APPROVED/DATE:

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

In the Matter of the Search of                          )
*(Briefly describe the property to be searched*          )
*or identify the person by name and address)*            )       Case No. M-24- 539     -STE
                                                        )
A Cellular Telephone Assigned Call Number (405) 506-8630 in the    )
custody or control of AT&T.                             )
                                                        )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Southern _____ District of _____ Florida _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Marc Jones, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Jun 28, 2024**

*Judge's signature*

City and state:  Oklahoma City, Oklahoma           SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBER (405) 506-8630 IN THE CUSTODY OR CONTROL OF AT&T. | Case No.  M-24-539   -STE<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Marc Jones, being first duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with call number **(405) 506-8630** ("**Subject Account**"), that is in the custody or control of AT&T, a wireless communications service provider located at, among other places,  11760 U.S. Highway 1, North Palm Beach, Florida 33408. As a provider of wireless communications service, AT&T is a provider of "electronic communications service," as defined in 18 U.S.C. § 2510(15).

2.     The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require AT&T to disclose to the government the information further described in Section I of

**Attachment B**. Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review the information to locate the items described in Section II of **Attachment B**.

3.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definition of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute, including a certification from an attorney for the government that the information likely to be obtained by the requested pen register and trap-and-trace device is relevant to an ongoing criminal investigation. *See* 18 U.S.C. § 3123(b)(1).  That certification is attached as **Attachment C**.

4.      In sum, this affidavit is made in support of an application for three distinct items: (1) a pen register and trap-and-trace device on the **Subject Account**, pursuant to 18 U.S.C. § 3121–3127; (2) a "ping" on the **Subject Account**, pursuant to 18 U.S.C. § 2703 and Fed. R. Crim. P. 41(c); and (3) an order for historical and prospective cell site data for the **Subject Account,** pursuant to 18 U.S.C. § 2703(d).

5.      I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since April 11, 2021.  I am currently assigned to the Oklahoma City Division, where I have been

involved in a wide variety of investigative matters, including numerous investigations targeting large criminal enterprises, most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. As part of my investigative experience as an FBI Special Agent, I have executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. § 846 has been committed by Luis Hernandez Dominguez (**DOMINGUEZ**). On June 17, 2024, a grand jury in the Western District of Oklahoma returned a federal indictment that charged **DOMINGUEZ**, along with his coconspirator, with a drug conspiracy involving 500 grams or more of cocaine. On June 18, 2024, a federal arrest warrant was issued for **DOMINGUEZ**. There is also probable cause to search the information described in **Attachment A** to assist and aid in the apprehension of **AGUILAR** as further described in **Attachment B**.

3

8.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.      In October of 2022, Special Agents and Task Force Officers (TFOs) assigned to the FBI initiated a joint investigation targeting Carlos Villanueva (VILLANUEVA) —whom law enforcement believed to be part of a drug trafficking organization (DTO) that distributed cocaine in the Oklahoma City area. After multiple controlled drug buys and the execution of search warrants, VILLANUEVA was arrested by the FBI in November of 2023. During May 2023, VILLANUEVA and his codefendant, Destin O'Neil Miller (MILLER), both pled guilty in case CR-23-480-R.

10.     During the VILLANUEVA investigation, agents learned that Luis Hernandez Dominguez (**DOMINGUEZ**) was an associate of VILLANUEVA and also a potential drug-trafficker. Since law enforcement had a pole camera on VILLANUEVA's residence, they routinely observed **DOMINGUEZ** arrive at VILLANUEVA's house for what appeared to be drug pickups.[1] The two rarely spent much time together because **DOMINGUEZ** would arrive, enter VILLANUEVA's residence empty-handed or with an

---

[1]      In November of 2023, a search of VILLANUEVA's residence resulted in the seizure of approximately 10 kilograms of cocaine, two firearms, and approximately $24,000 in U.S. currency.

4

empty bag, stay just a few minutes, and then depart the residence usually carrying a box or full bag.

11.    VILLANUEVA was arrested during November 2023. Following his arrest, the DTO VILLANUEVA worked for was not as active in Oklahoma City as they were throughout much of late 2022 through 2023. During April of 2024, it started to become apparent that **DOMINGUEZ** had clearly ascended to the position within the DTO that VILLANUEVA previously held.

12.    During early 2024, law enforcement reached out to **DOMINGUEZ** on the **Subject Account** and attempted to coordinate a controlled buy of cocaine from **DOMINGUEZ**. However, **DOMINGUEZ** informed a confidential human source (CS1) that he would not sell smaller than half kilogram quantities of cocaine. It is rare to conduct controlled purchases in these amounts because a kilogram of cocaine because it is so cost prohibitive – usually $25,000 - $30,000 in Oklahoma. However, **DOMINGUEZ** informed CS1 that he had someone who worked for him, Antonio MARQUEZ, that would break **DOMINGUEZ's** cocaine down to sell in smaller quantities and **DOMINGUEZ** would put CS1 in contact with him.

13.    Ultimately, the FBI was able to conduct two controlled purchases of cocaine from MARQUEZ and MARQUEZ verbally confirmed that **DOMINGUEZ** was his source of supply. On May 30, 2024, agents executed search warrants at the residences for MARQUEZ and **DOMINGUEZ**. MARQUEZ had a kilogram of cocaine at his house, firearms, and U.S. Currency and he was arrested. When investigators went to **DOMINGUEZ's** home, he was not there. His wife and children were present, and the

5

agents eventually learned that he was out of town.  The agents did not seize any items of evidentiary value.

14.    Following the Indictment, which was not sealed, the FBI has tried to execute the arrest warrant for **DOMINGUEZ** with no success.  It is believed that he has only been in the local area once in roughly the past two weeks and agents do not know where is currently located.

15.    Through administrative subpoenas, I have confirmed that AT&T provides service for the **Subject Account**.  AT&T information lists Jessie Martinez as the subscriber for this account however agents know this account to be used by **DOMINGUEZ** based on the fact that he provided CS1 the **Subject Account** as his phone number.

16.    In my training and experience, I have learned that AT&T is a company that provides cellular communications service to the general public.  I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten (10) or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call to or from that device.  Accordingly, cell-site data provides an approximate general location of the cellular device.

17.    Based on my training and experience, I know that AT&T can collect cell-site data about **Subject Account**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").  The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

19.     Based on my training and experience, I know wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may assist in obtaining further evidence against **DOMINGUEZ** as well as any co-conspirators.

20.     Based on my training and experience, using the combination of both historical and prospective location information is helpful in locating individuals.  The historical location information from cellular phones can help establish a pattern of life, while prospective location information—including cell-site information, phone pings, and timing advance measurements/distance-to-tower measurements—can help provide more precise real-time information regarding the location of the **Subject Account's** user.  To help ensure that **DOMINGUEZ** is located, I am requesting precise location information for the next forty-five (45) days for the **Subject Account**.

## AUTHORIZATION REQUEST

21.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C.  § 2703(c) and Fed. R. Crim. P. 41.  The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use

8

of a pen register and/or trap and trace device to record, decode, and/or capture certain information in **Attachment A** for each communication to or from **Subject Account**, without geographic limit, for a period of forty-five (45) days pursuant to 18 U.S.C. § 3123(c)(1).

22.    I further request, pursuant to 18 U.S.C. § 2703(b)(1)(A), that the Court find that the government is not required to provide notice of this warrant to the subscriber, customer, or person who was monitored. I also request, pursuant to 18 U.S.C. § 3123(d), that AT&T be ordered not to disclose to the listed customer or any other person the existence and/or use of the pen register and trap-and-trace device sought herein. Additionally, there is reasonable cause to believe that providing immediate notification of the warrant to the subscriber, customer, or person who is being monitored may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber, customer, or user of the **Subject Account** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 2705(a)(2). Therefore, I request that the Court order AT&T not to notify any other person of the existence of this warrant and order for a period of one year from the date the requested warrant is issued, except that the service provider may disclose this warrant and order to an attorney for the service provider for the purpose of receiving legal advice. As further specified in **Attachment B**, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes

the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23.    I further request that the Court direct AT&T to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on AT&T , who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

24.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for a period of one year from the date the requested warrant is issued, or until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents as their premature disclosure may jeopardize this investigation.

Respectfully submitted,

MARC JONES
FBI Special Agent

Subscribed and sworn to before me on June 28, 2024.

SHON T. ERWIN
United States Magistrate Judge

10

## ATTACHMENT A
### Property to Be Searched

1.    The cellular telephone assigned call number **(405) 506-8630** (**"Subject Account"**), whose wireless service provider is AT&T (the "Provider"), a wireless communications service provider that accepts process at 11760 U.S. Highway 1 North Palm Beach, Florida 33408.

2.    Records and information associated with **Subject Account** that is within the possession, custody, or control of the Provider.

11

## ATTACHMENT B

### Particular Things to Be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **Subject Account,** as listed in **Attachment A**:

a.    The following information about the customers or subscribers associated with **Subject Account** from May 30, 2024, to the present:

    i.    Names (including subscriber names, user names, and screen names);

    ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.    Local and long-distance telephone connection records;

    iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.    Length of service (including start date) and types of service utilized;

    vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records;

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Subject Account**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communication were sent and received; to include the cell tower roundtrip network measurements from tower to device and back to tower, commonly referred to as Timing Advance data (RTT, PCMD, TrueCall, LOCDBOR, etc.).

b. The following information about the customers or subscribers associated with **Subject Account** for a period of 45 days from the issuance of the warrant, including:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

      vi.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

c.    Prospective information about the location of the cellular phone associated with **Subject Account** for a period of 45 days (during all times of day and night) from the issuance of the warrant, including:

      i.      E-911 Phase II data;

      ii.     GPS data to include cell tower sector information;

      iii.    Latitude-longitude data;

      iv.    Other precise location information, including engineering data to include but not limited to RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

      v.     Pen / Trap and Trace device with prospective cell site information or data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Subject Account** during any voice, SMS, and/or data transmission, including but not limited to engineering data which would include RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records.

3

## II.    Information to Be Seized by the Government

All information described above in Section I that would assist and aid in the investigation of violations of 21 U.S.C. § 846 and assist law enforcement in executing the federal arrest warrant for **DOMINGUEZ**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by AT&T in order to locate the things particularly described in this Warrant.

4

## ATTACHMENT C

### 18 U.S.C. § 3122 Certification

In support of this application, and pursuant to 18 U.S.C. § 3122, I state that I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure. I certify that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by the Investigating Agency of the Target Subject(s) for violation(s) of the Target Offense(s).

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.

28 Jun 24
_____
DATE

_____
Jason M. Harley
Assistant United States Attorney